# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

TYLER L. ANDREWS,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff United States Securities and Exchange Commission ("SEC") alleges as follows for its Complaint against Defendant Tyler L. Andrews ("Andrews" or "Defendant"):

## <u>SUMMARY</u>

1.    From May through October 2019, Andrews defrauded investors out of over $1 million through the offer and sale of promissory notes as part of the luxury travel business of Platinum Travel and Entertainment, L.L.C., which was operated by Gregory A. Ciccone, a convicted felon.

2.    Ciccone used Andrews to solicit investors to purchase promissory notes from Platinum for the purported purpose of raising funds to secure high-end

hotel reservations. Ciccone provided Andrews with false information about the purpose of the promissory notes with the expectation that Andrews would pass that information along in soliciting investors. In addition to providing the false information provided by Ciccone, Andrews made false and misleading statements to investors in connection with his offer and sale of the promissory notes that he knew or was reckless in not knowing, and should have known, were false or misleading.

3.      For example, Andrews hid Ciccone's criminal history, falsely claimed an attorney had performed due diligence on the investments, misstated the collateral securing the investments, failed to tell investors that Platinum had not repaid the promissory notes on time, falsely touted his own investments in Platinum, and misrepresented the cause of repayment delays. Andrews also personally misappropriated investor funds, and Andrews requested that Ciccone used investors' funds to make a Ponzi-like payment to an earlier investor and continued to solicit investors after he learned of the fraudulent payment.

4.      As a result of the conduct described herein, Andrews violated, and unless restrained and enjoined will continue to violate, the securities registration and antifraud provisions of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)], Section 10(b) of the

2

Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5].

5.    The SEC seeks entry of an injunction enjoining Andrews from future violations of the securities registration and anti-fraud provisions of the federal securities laws, enjoining him from soliciting any person or entity to purchase or sell any security in an unregistered offering by an issuer, barring him from serving as an officer or director of a public company, ordering disgorgement of his ill-gotten gains from the unlawful activity set forth in this Complaint pursuant to Sections 21(d)(3), (5) and (7) of the Exchange Act [15 U.S.C. §§ 78(d)(3), (5) and (7)] together with prejudgment interest, ordering civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and providing for such other relief that the Court may deem appropriate.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)], and Sections 21(d)(1), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d)(1), 78u(e), and 78aa(a)].

7.    Andrews, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, the means or

3

instrumentality of interstate commerce, or of the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.  Andrews communicated with prospective investors by means of telephone calls, emails, text messages and the Internet in the offer and sale of the promissory notes, and caused wire transfers of funds to be made and received through communications in interstate commerce.

8.    Venue lies in the District of Colorado pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)].  Andrews engaged in certain of the acts, practices, or courses of business alleged in this Complaint within the District of Colorado, including, but not limited to, the offer and sale of promissory notes, drafting and disseminating promissory notes, and directing investors to send wire transfers for the purchase of promissory notes.  In addition, Andrews resides in this district.

## **DEFENDANT**

9.    **Tyler L. Andrews**, age 34, is a resident of Colorado Springs, Colorado.  From approximately May through October 2019 (the "Relevant Period"), Andrews transacted business and offered and sold securities while he resided in Colorado Springs, Colorado.  Andrews was a business development officer at a Colorado Springs company that offered private lending contracts to prospective investors.

## RELATED PARTIES

10. **Gregory Ciccone** ("Ciccone"), now deceased, resided in San Diego, California from approximately November 2018 through at least February 2020. The SEC filed a related civil case against Ciccone and Platinum, SEC v. Ciccone, No. 2:21-cv-17768 (D.N.J. Sept. 29, 2021), which was dismissed after Ciccone died. Andrews was identified in the Ciccone complaint as "Sales Agent 1."

11. **Platinum Travel and Entertainment, L.L.C.** ("Platinum") was a New Jersey limited liability company with its principal place of business in San Diego, California from approximately November 2018 through at least February 2020. Ciccone was the sole owner, managing member, and president of Platinum.

## FACTS

### I. Defendant Raised Money from Investors through the Offer and Sale of Securities.

12. In or about April 2019, Andrews was introduced over a telephone call to Ciccone by a mutual acquaintance.

13. During the April 2019 telephone call and later telephone conversations, Ciccone told Andrews that Ciccone operated Platinum, which was offering short-term, high-interest promissory notes (the "Promissory Notes") to obtain funds to pay advance deposits to reserve luxury travel for Platinum's clients, and that Platinum earned money based on commissions received from hotels and others in connection with its luxury travel concierge business.

5

14.     Ciccone knowingly or recklessly provided false and misleading information to Andrews with the intention, expectation, and knowledge that Andrews would pass along that false and misleading information in the solicitation of investors to purchase Platinum Promissory Notes.

15.     The Promissory Notes had terms that varied from 45 to 146 days, and paid interest ranging from 15% to 50% per term.

16.     Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act [15 U.S.C. §§ 77b(a)(1) and 78c(a)(10)] define "security" to include, among other things, any "note."

17.     The Promissory Notes are securities in the form of "notes."

18.     The stated purpose of the Promissory Notes was to finance Platinum's purported luxury travel business; the investors were primarily motivated by the high interest rate payable under the Promissory Notes and did not enter into the Promissory Notes for any consumer purpose; and investors viewed the Promissory Notes as investments with guaranteed returns of between 15% and 50%, depending on the term of the Promissory Note.

19.     On April 24, 2019, Andrews received an email from Ciccone containing Platinum's "marketing deck" that described Platinum's business as a "luxury travel concierge" with "unique relationships" that allowed it to provide high-end experiences to its clients.  The marketing deck also described the services

6

that Platinum offered and provided information on the background of the company and its target market.

20.    Starting in May 2019, Andrews received a series of emails from Ciccone describing various hotel reservations that Platinum purportedly held, for which Ciccone sought funding through the sale of Promissory Notes:

    a.  On May 13, 2019, Andrews received an email from Ciccone containing a list of Platinum's "immediate bookings," including a reservation for $24,000 at a hotel in Punta Mita, Mexico and other reservations totaling $211,000 that were purportedly scheduled at hotels through June 2019.  Ciccone requested Andrews solicit investors to purchase Platinum Promissory Notes so Platinum could pay for these "bookings."  Ciccone wrote that the loans would be repaid "on a 60 day payment schedule from the check-out date" on the reservation.

    b.  On June 11, 2019, Andrews received an email from Ciccone containing "future bookings through October" that contained eight hotel reservations around the country totaling approximately $538,450, for which Ciccone and Platinum sought funds through the sale of additional Promissory Notes.

  c. On July 1, 2019, Andrews received an email from Ciccone advising him that the "$220,000 [received from investors] last week covered three full events in July and is leaving a balance for the large Maui July Booking of $22,700.00 which is needed immediately. The other immediate booking starting August 1st, also in Maui, is for $192,000.00 which was raised from the original number because they requested to add some more rooms."

21. From May through October 2019, Andrews used information provided by Ciccone to offer and sell, directly or indirectly, the Promissory Notes to at least seventeen investors and raised over $1 million from those investors.

22. For example, in response to Ciccone's May 13, 2019 email, Andrews solicited an investor in Ohio (the "Ohio Investor") through telephone conversations and emails to purchase a $24,000 Promissory Note on May 17, 2019 and a second $14,000 Promissory Note on May 30, 2019.

23. Andrews also solicited an investor in Texas (the "Texas Investor") through telephone conversations, emails, and texts to purchase a $32,000 Promissory Note on May 31, 2019.

24. Andrews prepared the Promissory Notes for each investor and sent them over the Internet to Ciccone to electronically sign on behalf of Platinum. Andrews subsequently sent the signed Promissory Notes to investors.

8

25.     Andrews directed investors to wire funds for the purchase of the Promissory Notes to Platinum's bank accounts located in California and other states.

## II.     Andrews Obtained Funds from Investors through False and Misleading Statements and Omissions of Material Fact.

26.     Andrews offered the Promissory Notes to prospective investors who resided outside of Colorado by means and instruments of interstate communication, including by telephone calls, text messages, and emails.

### A.     Andrews made false and misleading statements and omissions about Ciccone's criminal conviction.

27.     On or about May 12, 2014, Ciccone pled guilty to, and was convicted of, one count of mail fraud under 18 U.S.C. § 1341, and one count of filing a false income tax return under 26 U.S.C. § 7206 in United States v. Ciccone, No. 2:2011cr554 (D.N.J. May 12, 2014).

28.     Andrews learned of Ciccone's criminal conviction on or about May 13, 2019, when a prospective investor sent him a copy of the Department of Justice press release regarding Ciccone's conviction.  Andrews confirmed the information about the criminal conviction with Ciccone.

29.     During the Relevant Period, Andrews made false and misleading statements of material fact to prospective investors in telephone conversations and

emails, that Ciccone was a great guy, impressive entrepreneur, and successful business man.

30.    Andrews' statements about Ciccone being a great guy, impressive entrepreneur, and successful business man were misleading because Andrews did not disclose the material fact that Ciccone was convicted of two felonies, which was necessary to make his statements about Ciccone not misleading to the prospective investors.

31.    Andrews knew or was reckless in not knowing, and should have known, that his statements about Ciccone were misleading when made without disclosing Ciccone's felony convictions.

32.    Andrews' omission of the fact that Ciccone was a convicted felon were material to investors.  A reasonable investor would want to know that the person with whom they are trusting their investment was previously convicted of fraud.

    B.  <u>Andrews made false and misleading statements that an attorney prepared the Promissory Notes and conducted due diligence.</u>

33.    During the Relevant Period, Andrews made false and misleading statements in telephone conversations and texts with prospective investors that an attorney prepared the Promissory Notes and conducted due diligence on the investments with Platinum.

34.     These statements were false and misleading because Andrews, who is not an attorney, prepared the Promissory Notes and no attorney conducted due diligence on the proposed investments with Platinum.

35.     Andrews knew or was reckless in not knowing, and should have known, that these statements were false and misleading when made.  Andrews knew that he prepared the Promissory Notes sent to investors and that he did not engage an attorney to conduct due diligence upon the proposed investments with Platinum.

36.     Andrews' false and misleading statements regarding an attorney preparing the Promissory Notes and conducting due diligence upon the investments with Platinum were material to investors.  A reasonable investor would want to know whether an attorney had prepared the legal documents for the investment and conducted due diligence on the merits of the investment.

  C.   <u>Andrews made false and misleading statements about collateral securing the Promissory Notes.</u>

37.     During the Relevant Period, Andrews made false and misleading statements in telephone conversations and texts with prospective investors, and in the Promissory Notes that he prepared, that the loans were secured by collateral, including Ciccone's 2016 BMW automobile and a house in San Diego, California.

38.     Andrews believed the 2016 BMW had a value of approximately $80,000.

11

39.    Ciccone did not own the house listed as collateral.

40.    Andrews' statements were false and misleading because Andrews knew that the BMW was pledged as collateral on numerous Promissory Notes that he prepared, and that these loan amounts exceeded the estimated $80,000 value of the automobile.  Andrews was reckless in not knowing, and should have known, that Ciccone did not own the house listed as collateral.  In addition, Andrews knew that none of Ciccone's assets could be used to secure the Promissory Notes.  In a May 16, 2019 email, Ciccone told Andrews that his assets were not available to secure the Promissory Notes.

41.    Andrews knew or was reckless in not knowing, and should have known, that his statements about the collateral were false and misleading when made.

42.    Andrews' false and misleading statements regarding the collateral securing the Promissory Notes were material to investors.  A reasonable investor would want to know that Ciccone's BMW was pledged as collateral for several Promissory Notes, which greatly exceeded the value of the automobile, and that Ciccone's assets were not available as collateral.

   D.    Andrews made false and misleading statements about Platinum making timely payments on its Promissory Notes.

43.    As noted above in paragraph 22, on or about May 16, 2019, Andrews offered for sale the first Promissory Note for $24,000 to the Ohio Investor.

Andrews knew from his preparation of the first Promissory Note that Platinum agreed to repay the principal and interest on July 19, 2019.

44.    During May and June 2019, Andrews offered for sale additional Promissory Notes, including a second Promissory Note for $14,000 to the Ohio Investor. These Promissory Notes were due on or about July 26, 2019.

45.    On or about July 23, 2019, Andrews knew from his preparation of the first Promissory Note and his communications with Ciccone that Platinum did not make timely repayment of the first Promissory Note on July 19, 2019 as required by its terms.

46.    On or about July 26, 2019, Andrews knew from his preparation of the additional Promissory Notes and his communications with Ciccone that Platinum did not make timely repayments of the additional Promissory Notes on July 26, 2019 as required by their terms.

47.    From July 23, 2019 through at least October 31, 2019, Andrews made false and misleading statements in telephone conversations with at least nine prospective investors that Platinum was a successful business that could repay its Promissory Notes according to the terms of the agreements.  He did not disclose that Platinum did not make timely repayments according to the terms of the Promissory Notes that were due on or after July 23, 2019.

48.    For example, on July 24, 2019 and August 5, 2019, in telephone conversations Andrews offered for sale Promissory Notes of approximately $198,000 and $50,000 to two investors in Texas, stated that Platinum was a successful business that could repay its Promissory Notes, but did not disclose that Platinum was not making timely repayments on its existing loans.

49.    Andrews' statements that Platinum was a successful business that could repay its Promissory Notes were misleading.  Andrews omitted to state material facts that were necessary to render these statements not misleading.  These omissions include that Platinum had not timely repaid previously-issued Promissory Notes.

50.    Andrews knew or was reckless in not knowing, and should have known, that the statements regarding Platinum's business and its ability to make timely repayments were misleading.  From July 23, 2019 through at least October 31, 2019, when Andrews made these statements, he knew that Platinum had not timely repaid previously-issued Promissory Notes.

51.    Andrews' misleading statements regarding Platinum's business and its ability to make timely payments were material to investors.  A reasonable investor would want to know whether the borrower would have the ability to make timely payments.

    E.    Andrews made false and misleading statements about his previous investment in Platinum Promissory Notes to induce an investment.

14

52.     During June 2019, Andrews offered for sale two Promissory Notes for $26,000 and $100,000 to a prospective investor.  Andrews made false statements in telephone conversations with the investor that Andrews had previously invested in Promissory Notes with Platinum and received significant returns for several years.

53.     These statements were false because Andrews had not known Ciccone for years, had not invested with Platinum, and had not received significant returns on any such investment.

54.     Andrews knew or was reckless in not knowing, and should have known, that his statement about personally investing with Platinum for several years were not true because he first met Ciccone in April 2019, just two months prior.  Andrews also knew that he had not invested any money in Platinum's Promissory Notes and had not received any returns.

55.     Andrews' false statements regarding his previous successful investments with Platinum were material to investors.  A reasonable investor would want to know that the person offering the investments had success with the same investment that they recommended to the investor.

     F.    <u>Andrews made false and misleading statements about Platinum's inability to return money to investors.</u>

56.     In text messages on August 6, 2019, Andrews told Ciccone that investors were complaining that they were not being timely repaid.

15

57.     Ciccone made false and misleading statements to investors through Andrews to prevent the investors from learning that Platinum would not be able to make payments as promised in the Platinum Promissory Notes. Ciccone provided this information to Andrews with the knowledge and expectation that Andrews would provide that information to investors to delay their demands for repayment.

58.     To explain the delay, starting on or about August 7, 2019, Ciccone told Andrews in text messages, telephone calls, and emails that Platinum's bank had placed a hold on Platinum's bank account, which was to receive commission checks from the hotel with which Platinum was purportedly doing business.  The bank did not place a hold on Platinum's bank account.

59.     On August 19, 2019, Andrews exchanged text messages with Ciccone about a potential investor investing $100,000 in the next several days.  Andrews suggested that Ciccone not use the new investor's funds to pay for hotel reservations but instead to repay the current lenders who would then reinvest with Platinum.  Andrews suggested taking this action to show the investors the returns were real and to create a track record of successful investment.

60.     On August 19, 2019, Ciccone forwarded to Andrews an August 17, 2019 email purportedly from an employee of Platinum's bank, indicating that there was a hold on Platinum's account and stating that the hold would continue through August 21, 2019 and then wire transfers would be executed.

16

61.     As noted in paragraph 23, above, Andrews solicited the "Texas Investor" to purchase a $32,000 Promissory Note on May 31, 2019. To placate the Texas Investor who was demanding repayment, Andrews forward the August 17, 2019 bank email to the Texas Investor.

62.     The Texas Investor contacted the employee of the bank listed as the author of the email and learned that the employee had not written the email and the document sent by Ciccone and forwarded by Andrews was fake.  On August 26, 2019, the Texas Investor sent a text message to Andrews advising him that the bank employee did not send the August 17, 2019 bank email.

63.     Despite learning that the August 17, 2019 bank email was fake and knowing that the bank did not, in fact, place a hold on the account, Andrews prepared a letter on August 27, 2019 for Ciccone and Platinum to send to investors explaining the delays in payments on the Promissory Notes were due to, among other things, the bank placing a hold on Platinum's bank account.

64.     On August 29, 2019, Ciccone sent the investors the letter that Andrews had prepared about the bank placing a hold on Platinum's bank account, and copied Andrews on the correspondence.

65.     This letter was false because Platinum's bank had not placed a hold on its bank account.

66.     Andrews knew or was reckless in not knowing, and should have

17

known, that his statements in the August 27, 2019 letter to investors about the reason for the delays in repaying investors were false and misleading.

67.    Andrews' false statements regarding the hold on Platinum's bank account were material to investors.  A reasonable investor would want to know that the delays in payment were not due to the bank placing a hold on Platinum's bank account.

## III.    In Connection with the Offering of Securities, Andrews Engaged in Deceptive Acts.

68.    During the Relevant Period, in addition to the false and misleading statements described above, Andrews engaged in additional deceptive conduct to defraud investors, and engaged in numerous acts, practices, or courses of business that defrauded the investors.

### A.    Andrews misused investors' funds provided to him to be used for attorney's fees.

69.    On or about July 25, 2019, Andrews sent Ciccone a text message falsely stating that Andrews had receive an attorney's bill for $4,520.  In response, on July 29, 2019, Ciccone and Platinum paid Andrews $4,520 out of funds received from investors.

70.    On or about September 8, 2019, Andrews falsely stated the he needed additional funds to pay attorney's fees, and Ciccone paid him $470 out of funds received from investors.

71.     On or about October 18, 2019, Andrews falsely stated that he needed an additional $10,000 to pay attorney's fees.  In response, on October 18, 2019, Ciccone paid Andrews $10,000 out of funds received from investors.

72.     Andrews did not use the funds to pay any attorney's fees.  Instead, Andrews misappropriated the funds and kept the money for himself.

### B. Andrews worked with Ciccone to make a Ponzi-like payment.

73.     In October 2019, Andrews continued to receive requests from the Texas Investor for repayment of his overdue Promissory Note.

74.     On or about October 8, 2019, Andrews offered to sell a $41,500 Promissory Note to investors representing that their funds would be used in Platinum's luxury travel business.  The investors agreed to purchase the Promissory Note and send the payment.

75.     On or about October 9, 2019, Andrews and Ciccone exchanged text messages that the investors were sending the $41,500 by wire transfer.  Andrews requested that Ciccone discuss with him the best use of the funds before paying those funds to a hotel.  In text messages that day, Andrews told Ciccone that the Texas Investor was demanding repayment.  Andrews stated that the Texas Investor requested a $10,000 repayment.

76.　　On or about October 11, 2019, Andrews offered the Ohio Investor Promissory Notes for $22,500 and $10,000.  Andrews told the Ohio Investor that Platinum would use the $32,500 to pay advance deposits to reserve luxury travel.

77.　　Following receipt of $32,500 from the Ohio Investor, Andrews recommended in an October 15, 2019 text, that Ciccone use part of the funds to pay Ciccone's attorney and use $10,000 to repay the Texas Investor.  Ciccone followed Andrews' recommendation, sent the Texas Investor $10,000, and texted Andrews a copy of a $10,000 cashier's check paid to the Texas Investor.

78.　　Andrews continued to solicit investors after learning about this Ponzi-like payment to the Texas Investor.

**IV.　Andrews Engaged in Deceptive Lulling Conduct.**

79.　　Andrews falsely assured two investors that their money was used appropriately.

80.　　First, on September 24, 2019, an investor texted Andrews that she received a fraud alert from her bank about a $50,000 wire that she sent to Platinum to purchase a Promissory Note in August 2019 that was to be used to make hotel reservations.

81.　　In response to her concerns about the fraud alert from her bank, Andrews texted the investor that he "confirmed with [the bank that] the wire went out to [the hotel]," and requested that she confirm with her bank that there was no

fraud regarding her wire to Platinum. Andrews had not, in fact, confirmed with the bank that a wire was sent. The investor's money was never wired to the hotel; instead, Ciccone misappropriated it.

82. On September 27, 2019, Andrews texted the investor that he had confirmed with the hotel that the $50,000 had been received. In fact, Andrews had not confirmed this information with the hotel.

83. Andrews knew or was reckless in not knowing, and should have known, that he had not received confirmations from the bank or the hotel.

84. Second, on September 27, 2019, Andrews told another investor that the business development company where he worked had potential liability of about $700,000 if Platinum did not repay the Promissory Notes. Andrews made this statement to lull the investor into believing her investment was guaranteed by the business development company.

85. Andrews knew or was reckless in not knowing, and should have known, that the company he worked for did not, in fact, make an investment with Platinum or guarantee the Promissory Notes.

## V. The Promissory Notes Were Sold When No Registration Statement Was in Effect.

86. Section 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)] make it unlawful for any person, directly or indirectly, to use interstate commerce or the mails, to sell a security unless a registration statement is in effect as to the

security, or to offer to sell a security unless a registration statement has been filed as to such security.

87.    As detailed above, from May through October 2019, Andrews offered and sold securities in the form of the Promissory Notes to at least seventeen investors and obtained approximately $1,022,680.

88.    Andrews offered and sold securities using the means or instruments of interstate commerce, including, but not limited to, telephone, text, email, and wire transfers.

89.    Andrews was a necessary participant and substantial factor in the securities offerings identified above.  Among other things, Andrews arranged the offering of the Promissory Notes, drafted the Promissory Notes, and made the statements to induce investors to purchase the Promissory Notes.  As such, Andrews' actions were integral to the success of the offering.

90.    No registration statement was filed or in effect with the SEC for the offers and sales of the Promissory Notes.

91.    No exemption from registration existed with respect to the offering.

## FIRST CLAIM FOR RELIEF
### Fraud—Section 10(b) of the Exchange and Rule 10b-5 Thereunder

92.    The SEC realleges and incorporates by reference paragraphs 1 through 91 as though fully set forth herein.

93.     By virtue of the foregoing, Andrews, directly or indirectly, acting with scienter, by use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of a national securities exchange, in connection with the purchase or sale of a security: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon another person.

94.     By reason of the conduct described above, Andrews, directly or indirectly, violated, and unless restrained and enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(b)].

## SECOND CLAIM FOR RELIEF
### Fraud – Section 17(a) of the Securities Act

95.     The SEC realleges and incorporates by reference paragraphs 1 through 91 as though fully set forth herein.

96.     By virtue of the foregoing, Andrews, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, (1) employed a device, scheme, or artifice to defraud with scienter; (2) obtained money or property

by means of an untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) engaged in a transaction, practice or course of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

97.     Accordingly, Andrews violated and, unless restrained and enjoined, will again violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**THIRD CLAIM FOR RELIEF**
**Offer and Sale of Unregistered Securities – Section 5(a) and (c) of the Securities Act**

98.     The SEC realleges and incorporates by reference paragraphs 1 through 91 as though fully set forth herein.

99.     Andrews, directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell a security through the use or medium of a prospectus or otherwise, or to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, a security for the purpose of sale or for delivery after sale, when no registration statement was in effect as to that security.

100.    Andrews, directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in interstate commerce

or of the mails to offer to sell or offer to buy any security through the use or medium of a prospectus or otherwise, when no registration statement had been filed for such security.

101.    Accordingly, Andrews violated and, unless restrained and enjoined, will again violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## JURY DEMAND

The SEC demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

Therefore, the SEC respectfully requests that this Court:

(a)    Find that the Defendant committed the violations alleged in this Complaint;

(b)    Permanently enjoin the Defendant from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] pursuant to FED. R. CIV. P. 65;

(c)    Permanently enjoin Defendant from, directly or indirectly, including but not limited to through any entity owned or controlled by Andrews, soliciting any person or entity to purchase or sell any security in an unregistered offering by an issuer;

(d)     Order Defendant to be barred from serving as an officer or director of a publicly-held company pursuant to Section 21(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

(e)     Order Defendant to disgorge all ill-gotten gains received during the period of the violative conduct, together with pre-judgment interest, pursuant to the Court's equitable powers and Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

(f)     Order Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

(g)     Grant such other and further relief as this Court may deem just and proper.

Dated: April 27, 2023

Respectfully submitted,
/s/ Leslie J. Hughes
Leslie J. Hughes, (Colo. Bar No. 15043]
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
Telephone: 303-844-1086
Email: hugheslj@sec.gov
*Attorney for Plaintiff – United States Securities and Exchange Commission*